rendered but did not, namely—a judgment of acquittal, which it now does accordingly.

**Dunlap and Lawrence, JJ., concur.**

---

## CRIMINAL LAW—JURY.

[Stark (5th) Court of Appeals, September Term, 1917.]

Shields, Powell and Houck, JJ.

CHARLES BURTNETT v. STATE OF OHIO.

**Examination by State of Venireman on Voir Dire as to Recommending Mercy in First Degree Murder Trial Proper.**
Inquiry by counsel for the state on voir dire examination of veniremen as to the views entertained by them on the question of recommending mercy if the evidence and law require a verdict of guilty of murder in the first degree is not erroneous, especially since counsel for accused had previously raised the question on cross examination.

[Syllabus approved by the court.]

*Braucher & Sterling,* for plaintiff in error.

*Frank N. Sweitzer,* Pros. Atty., and *Thos. H. Leahy,* Asst. Pros., for defendant in error.

**SHIELDS, J.**

At the May (1917) term of the court of common pleas of said Stark county, the grand jury of said county returned an indictment against the plaintiff in error for murder in the first degree. Upon a plea of not guilty being entered, the plaintiff in error was tried upon said indictment and found guilty by a jury. Upon a motion for a new trial being overruled, the plaintiff in error was sentenced by said court to be electrocuted according to law. Error is alleged to have intervened in the selection of the jury for the trial of said cause, and for other alleged errors, for which a petition in error was filed to reverse said judgment of conviction and sentence.

While said petition in error contains numerous assignments of error, the principal ground of alleged error relied upon and argued was that contained in the fourth ground stated in said petition in error and which is as follows:

"4.   Said court erred in permitting the defendant in error to inquire of the jurors at the time the jury was impanelled of their views and opinions on the question of recommending mercy, and to which the plaintiff in error at the time excepted."

In the exercise of a power conferred upon it by the constitution guaranteeing and preserving to every person charged with crime the right of trial by jury, the legislature of this state with a jealous regard for such right in capital cases has provided a scheme of legislation outlining various modes of procedure to be observed at each successive step taken in such cases from the time of the indictment of the accused to the close of the trial—all such legislation being enacted to secure to the accused a fair and impartial trial.   In short, the law aims to afford to one thus charged its full measure of protection.   Along the line of such procedure, it is provided that care and circumspection shall be observed in the selection of veniremen and to this end it is provided in the General Code as follows:

Section 13653.   The following shall be good cause for challenging a person called as a juror on an indictment:

First.   That he was a member of the grand jury which found such indictment;

Second.   That he has formed or expressed an opinion as to the guilt or innocence of the accused; but if a juror has formed or expressed such opinion, the court shall thereupon examine such juror on oath as to the grounds thereof, and if such juror says that he believes he can render an impartial verdict notwithstanding such opinion, and the court is satisfied that such juror will render an impartial verdict on the evidence, the court may admit him as competent to serve as a juror in such case;

Third.   In indictments for a capital offense, that his opinions preclude him from finding the accused guilty of an offense punishable with death."

Burtnett v. State.

The remaining portions of said section are omitted for the reason that they have no application to the case before us.

It is further provided in Sec. 13654 G. C.:

"Challenges for cause shall be tried by the court on the oath of the person challenged, or other evidence, and shall be made before the jury is sworn."

It will thus be seen that the selection of the jury is largely confided to the judgment of counsel for the accused and the state, under the direction of the trial court, who by express provision of the statute shall determine the qualification and eligibility of veniremen in a capital case.

The question made on the record before us is not that any such veniremen were challenged on the ground of a previously expressed opinion or preconceived notions of capital punishment, or on the suspicion of any prejudice against or partiality for either the accused or the state, or for any other known cause rendering such veniremen incapable or unfit to serve, except it is contended that said court erred in permitting counsel for the defendant in error to inquire of at least some of the veniremen on their *voir dire* as to the views entertained by them on the question of recommending mercy where the evidence and law required a verdict of guilty of murder in the first degree. The section of the code on which said indictment was predicated is as follows:

Sec. 12400. Whoever, purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery or burglary, kills another is guilty of murder in the first degree and shall be punished by death unless the jury trying the accused recommend mercy, in which case the punishment shall be imprisonment in the penitentiary during life."

The constitutionality of this statute having been passed on we are not here called upon to discuss that feature of it, whatever our views may be concerning the provision therein giving to the jury the right to recommend mercy in a first degree murder case, under a verdict of guilty, and especially since the jury in the case under consideration did not make any such recommendation. Referring to the record, it appears on page

6 thereof that one Albert Hurraw when called as a venireman into the jury box and after being interrogated by the state on the usual preliminary questions, including the question as to whether or not he was opposed to capital punishment, in a proper case, was cross-examined by counsel for the accused who asked him among others the following questions:

"Q.   Have you any convictions or settled opinions on the question as to whether or not a jury if the evidence would warrant returning a first degree verdict, should or should not recommend mercy?

A.   Well, that all depends on the jury.

Q.   Well, I say have you any settled convictions to oppose or argue in favor of either one of those propositions?

A.   No, I think not.

Q.   You would then, as I understand you, take into consideration the evidence in the case upon that point?

A.   Yes, sir.

Q.   And you haven't any feeling or prejudice upon that point, one way or the other?

A.   No, sir; the evidence is all I go by in the case.

Q.   I think that is all."

"There being no challenge for cause the juror is directed to take his seat in the jury box and does take his seat in the jury box."

It will be noticed that no inquiry whatever, either before or after the cross-examination of the venireman, was made on behalf of the state.

It appears that the next venireman called into the jury box was F. M. Frederick (Record, p. 7), who was asked practically the same question by counsel for the accused, on cross-examination, as asked by him of the preceding venireman and who answered that he had no opinion on the question of recommending mercy, and who in re-direct examination in substance reiterated such opinion. The question pertaining to a recommendation of mercy having been brought out and having been gone into on cross-examination by the accused, we know of no reason under the rules of evidence why the state should not be allowed to cross examine on the new matter thus brought out by

Burtnett v. State.

the accused.   Clearly we think the state had such right.   The record further shows that this venireman, F. M. Frederick, was afterward challenged peremptorily by the accused.   The answers of these veniremen, we think, furnish a full and complete answer to the contention made here on behalf of the plaintiff in error.   As if appreciating the purpose of the inquiry made on behalf of the accused, it appears that they frankly and fairly, and no doubt truthfully, answered that in reaching a final conclusion in the case they would be guided solely by the evidence and the law, each reserving to himself in the end the right to take counsel of his conscience and then under his obligation as a sworn juror decide whether under all the evidence in the case these should or should not be a recommendation of mercy.   Just how one in favor of the death penalty, in a proper case, could safely say at the outset of a trial what his mental attitude would be on the subject of favoring a recommendation of mercy at the end of such trial, under a finding of guilty, we will not stop to discuss, except to say there may be cases wherein at the conclusion of the deliberations of a jury it might be thought that the extenuating circumstances appearing justify a recommendation of mercy.   Here we think it clearly appears of record that the examination of the veniremen mentioned on their *voir dire* shows an entire absence of partiality in favor of or against a recommendation of mercy.   But supposing such examination had disclosed a partiality in favor of such recommendation, would it not then have been claimed that it furnished a sufficient ground for challenge for cause?   It may be that it would, but whatever its effect, it appears that the answers to such inquiries were not made the subject of challenge for cause here by the accused and therefore it could not avail him after trial.   *Mangano* v. *State*, 39 O. A. & C. 000 (17 N. S. 595).

And it further appears here that while one of the veniremen thus inquired of as to his vews of recommending mercy was peremptorily excused, as already stated, the other (Hurraw) was not so excused by the accused, although his right to further peremptory challenges under the statute was not exhausted before the jury was sworn.

As stated, the section of the statute cited provides that the trial judge shall be the trier of challenges for cause. All questions arising out of such challenges are to be passed upon and decided by such judge. He is clothed with the discretionary power to decide, and deciding, such decision is final, unless such exercise of discretion is manifestly abused. In *Serviss* v. *Stockstill*, 30 Ohio St. 418, it is held that: .

"Where a party to an action challenges a juror on suspicion of partiality for the opposite party, the validity of such challenge must be determined by the sound discretion of the court. And where such challenge is sustained, the judgment rendered in the case will not, for that reason, be reversed, unless an abuse of such discretion is clearly shown."

True, the foregoing was a civil action, but in Sub. 9 of said Sec. 13653 it is provided that "Like challenges shall be allowed in criminal prosecutions as are allowed in civil cases."

Of the purpose of said Sec. 13653 it is not necessary to discuss. As already stated, it aims to give one charged with crime a fair and impartial jury. As applied to this case, one of the challenges for cause to a venireman (Sub. 2) is "that his opinions preclude him from finding the accused guilty of an offense punishable with death." The statute (Sec. 12400) upon which the indictment is predicated reads "Whoever * * * kills another is guilty of murder in the first degree, and shall be punished by death unless the jury trying the accused recommend mercy * * * ." Here it appears that the infliction of the death penalty and the recommendation of mercy are so closely related in said section that inquiry as to one would readily authorize inquiry as to the other. Of course, if the result of such inquiry should afford a ground of challenge for cause, as already indicated, that would end the matter. The section referred to reads—"The court shall thereupon examine such juror as to the grounds thereof." Under this section regulating the selection of jurors in a capital case, neither the accused nor the state is restricted in any prescribed forms of questions to be asked as furnishing challenges for cause, as in other jurisdictions, hence a wide range of inquiry is permissible for the purpose of ascertaining the extent to which the mind

Burtnett v. State.

of a venireman is affected for or against either party. Keeping in mind, then, that the object of said section is to permit an examination of the venireman that will elicit his mental attitude bearing upon his qualifications to serve as a juror, what reasonable objection could be urged against inquiry being made as to the views of such venireman in respect to one of the provisions of said section upon which the crime charged is based, in view of the statutory duty imposed upon the trial judge as indicated? Not unlike the accused, the state is entitled to know in advance of the trial whether the jury being selected is to be composed of men who are fair and impartial and who having no conscientious scruples against the infliction of the death penalty will return a verdict in accordance with the evidence and the law, or whether it shall enter upon the trial with a prejudged verdict. Our judgment is that the rights of both the state and the accused in this respect are equal. While it is evident that the answers made to the questions put to said veniremen did not affect the legal rights of the accused one way or the other, and hence no prejudice resulted to the accused, there still remains an additional reason, in our judgment, why the questions asked on re-direct examination of the venireman, were proper, that is, in testing his qualifications, it was proper to thus inquire to ascertain whether or not such inquiry developed any bent of mind on the part of the venireman which might be deemed of sufficient importance to be taken advantage of in the subsequent peremptory challenges liable to be exercised. A discussion of this subject may be found in 1 Thompson, Trials, 2 ed. Secs. 101, 102 and 103 and wherein it is laid down that—

"Within reasonable limits, each party has a right to put pertinent questions to show not only that there exist proper grounds for a challenge for cause, but to elicit facts to enable him to decide whether or not he will exercise his right of peremptory challenge."

For the foregoing reasons we hold that this ground of alleged error is not well taken.

Among other errors assigned is that the court below erred in admitting in evidence the alleged confession of the plaintiff

in error.  An examination of the bill of exceptions shows that every reasonable precaution was taken by the trial court, preliminarily, to ascertain its competency before admitting the same.  That it was made voluntarily, without threats or promises and not induced by hope or fear excited in the mind of the accused, is furnished in the record that the same confession is to be found in the testimony of the accused himself when upon the witness stand as a witness in his own behalf.  *Spears* v. *State*, 2 Ohio St. 584; *Rufer* v. *State*, 25 Ohio St. 464, 470; *State* v. *Knapp*, 70 Ohio St. 380 [71 N. E. 705; 1 Ann. Cas. 819].

We have examined the remaining assignments of error in said petition in error and find no substantial or prejudicial error to the plaintiff in error in the entire record.  There is but one alternative left this court, therefore, and that is to affirm the judgment of the court below, however much we would prefer, if we could see our duty to do otherwise.  We are moved to say this not because we believe that life would be rendered secure by a lax administration of the criminal law by condoning in any  degree a crime like this, if committed under the influence of a long continued drunken debauch, but because the evidence upon the trial, furnished largely by the accused himself, tends to show either a selfassumed display of mawkish bravado, or a mind lacking in criminal responsibility.  Of the former we are not concerned; of the latter, it is only necessary to say that it is apparent from an examination of the charge of the trial court that the jury were instructed at no little length on the resultant effect of the excessive use of intoxicants by the accused as affecting his legal responsibility as a free agent, but under this charge in its application to the evidence introduced upon the trial it appears the obligation of duty resting upon the jury required the rendition of an undivided and unqualified verdict of guilty.  As a reviewing court, we cannot do otherwise than approve the verdict.

The judgment of the court of common pleas will be affirmed, and said cause is remanded for execution.

**Powell** and **Houck, JJ.,** concur.